UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KAREN ESTEFANI OCHOA GODOY, | Case No. 5:26-cv-04385-MAR |
| Petitioner, | |
| v. | ORDER GRANTING PETITION FOR HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE |
| MARKWAYNE MULLIN, ET AL, | |
| Respondents. | |

**I.**

**INTRODUCTION**

On August 4, 2026, Karen Estefani Ochoa Godoy ("Petitioner"), proceeding through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241.  ECF Docket No. ("Dkt.") 1 ("Pet.").  Petitioner argues her re-detention in Immigration and Customs Enforcement ("ICE") custody without notice or an opportunity to be heard violates her Fifth Amendment due process rights, her Fourth Amendment rights, the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA").  Pet. at 30–38.[1]  Petitioner seeks immediate release from custody under the terms of her prior release and an order enjoining Respondents from re-detaining her

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

or placing any monitoring device on her without notice and a pre-deprivation hearing. Id. at 38–39.  Petitioner also seeks costs and reasonable attorney's fees.  Id. at 39. Respondents have filed an Answer in which they state they are "not presenting an opposition argument."  Dkt. 8.  Thus, the matter stands submitted.

For the reasons set forth below, the Petition is **GRANTED**.

## II.

## BACKGROUND[2]

Petitioner is a citizen of Colombia who entered the United States to seek asylum in September 2021.  Pet. at 14.  Petitioner was taken into custody by immigration officials.  Id.  Subsequently, immigration authorities determined that Petitioner was not a flight risk or danger and she was released from immigration custody on an Order of Release on Recognizance ("OROR").  Id.  The order required no bond, ankle monitor, or any other condition of release other than Petitioner's agreement to appear as directed for hearings and interviews, and to surrender for removal if so ordered.  Id.

After her release, Petitioner began building a life for herself and her family in California.  Id. at 15.  She is a dedicated mother of two boys, ages seven and eight, who are enrolled in school.  Id.  Petitioner has never been arrested or charged with a crime.  Id.  The record, including letters of support for Petitioner, demonstrates that she is a well-regarded, law-abiding woman who has integrated into her community and has strong community ties in the United States.  Id. at 16.  The record in Petitioner's case demonstrates that she complied with the conditions of her release. Id.  Petitioner filed an appeal of the Immigration Judge's ("IJ") June 6, 2025, denial of her asylum claim.  Id. at 15.  The BIA has twice remanded the matter back to the IJ,

---

[2] The background provided arises from the allegations in the Verified Petition and attached exhibits, which Respondents do not contest.  See Pet at 14–17; Dkt. 8.  The Court considers the facts alleged by Petitioner to be undisputed and conceded for purposes of ruling on the Petition.  See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

both times indicating that the record does not include a transcription of the merits hearing or the IJ's oral decision.  Id.  The appeal remains pending before the BIA.  Id.  There is no final removal order applicable to Petitioner. Id.

On May 20, 2026, after dropping her two boys off at their elementary school, Petitioner returned to her car where a group of ICE officers confronted her.  Id. at 16.  Without identifying themselves, presenting a warrant, or explaining why they were seeking to detain her, the ICE officers forcefully handcuffed Petitioner, arrested her, and arranged for her transport to Adelanto.  Id.  The ICE officers did not ask about her asylum case or her status.  Id.  She asked them why she was being arrested, but the ICE officers did not respond.  Id.  She was re-arrested and re-detained without notice or an opportunity to contest the basis for her re-detention.  Id. at 16–17.

Petitioner's children are suffering in her absence.  Id. at 17.  Petitioner herself is distraught, experiencing extreme emotional distress, because she cannot provide support and care for her children.  Id.  She is extremely concerned that her extended disappearance from their lives will cause irreparable psychological damage and trauma to her sons.  Id.

The Court finds that Petitioner's detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process.  Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing.

### III.

### LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or

3

treaties of the United States.' "").  In federal habeas proceedings, the petitioner bears the burden of proving her case by a preponderance of evidence.  Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## IV.

## DISCUSSION

Consistent with recent decisions by this District and others, the Court finds that Petitioner's re-detention—without notice or a meaningful opportunity to be heard—violates procedural due process.

## A.  DUE PROCESS

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard.  See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in); see also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL

4

3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.  Mathews, 423 U.S. at 335.

**B.    ANALYSIS**

The Court finds that having been previously released from custody, Petitioner has a protected liberty interest in remaining free from detention.  See Garcia v. Noem, No. 25-CV-3759-LL-BLM, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026); Hurd v. D.C., Gov't, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated.").  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the ... conditions [of release].' "  Garcia, 2026 WL 194745, at *2 (citing Pinchi, 792 F. Supp. 3d at 1032); Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before she can be deprived of that interest.  See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).  To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action";

(2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.  The Court finds that all three factors support a finding that the government's arrest of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights.  See Garcia, 2026 WL 194745, at *3.

First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to her release.  See Pinchi, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)); see Cruz, No. 5:25-cv-02879, Dkt. 12 at 6; Yataco, 2025 WL 4065463, at *1; C.A.R.V. v. Wofford, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole").  Freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause."  See Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Petitioner's liberty interest is strengthened by the time she has lived in the United States and the connections made during that time.  It is undisputed that Petitioner has resided in the United States for approximately five years and become a valued member of her community.  Pet. at 16; see, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his

6

continued liberty."); Pinchi, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey, 408 U.S. at 482.

With respect to the second Mathews factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of [her] liberty interest absent a pre-detention hearing." Cruz, No. 5:25-cv-02879, Dkt. 12 at 7. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Since the initial determination that Petitioner should be released from custody because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, and she has diligently complied with the conditions of her release, including by appearing for her immigration court proceedings. See Pet at 14–15. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk ...." Id. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's

unnecessary detention.  See Garcia, 2026 WL 194745, at *3 (citing Pinchi, 792 F. Supp. 3d at 1035).

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low.  See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994.  Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]"  Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)).  "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).  There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government.  See Garcia, 2026 WL 194745, at *3.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in her unnecessary detention, and the Government's interest in refusing to provide such process is minimal.  The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.  See, e.g., Sanchez v. LaRose, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's

parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating his due process rights and rendering his detention unlawful); Garcia, 2026 WL 194745, at *3 (same); Mumaev v. Semaia, No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765 (C.D. Cal. Feb. 20, 2026) (same).

### 3. Remedy

The Supreme Court has repeatedly emphasized that "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."))

The Ninth Circuit has similarly held that "the purpose of habeas remedies is to 'put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred.'" Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (quoting Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003)); accord Chioino v. Kernan, 581 F.3d 1182, 1184 (9th Cir. 2009). Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed." Iurii Mazurov v. Desert Annex Det. Facility, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases); see also Changoluiza Corrales v. D. Marin, No. EDCV 26-01716-KK-RAOX, 2026 WL 1047934, at *6 (C.D. Cal. Apr. 15, 2026) (citing Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025)); Morales v. U.S. Immigr. & Customs Enf't, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234, at *7 (C.D. Cal. Apr. 15, 2026) ("join[ing] numerous of its sister courts in finding that Petitioner's detention is unlawful" due to unlawful parole revocation and ordering release notwithstanding prior TRO providing a bond hearing and collecting cases); Gutierrez v. Semaia, No. 5:26-CV-01181-HDV, 2026 WL

916773, at *2 (C.D. Cal. Mar. 27, 2026); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (similar).  As one court in this District has aptly put it, "[t]he Court must heed the language in Mathews that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.'" Villegas Molina v. Mullin, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (quoting Mathews, 424 U.S. at 331).

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").  Thus, the

Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

Accordingly, the Court finds that Petitioner's re-detention was unlawful, orders her forthwith release, and enjoins the Government from re-detaining Petitioner absent notice and an opportunity to be heard.

## V.

## ORDER

**IT IS THEREFORE ORDERED:**

(2) the Petition is **GRANTED**;

(3) Respondents are **ORDERED** to immediately release Petitioner **Karen Estefani Ochoa Godoy (A-Number 220-754-893)** from custody subject only to the conditions of her preexisting Order of Release on Recognizance;

(4) Respondents are **ORDERED** to immediately return all of Petitioner's belongings, including her identification documents, work authorization documents, and any other documents or belongings confiscated at or around the time of the commencement of her re-detention;

(5) Respondents are **ORDERED** to file a Notice of Compliance with the Court within forty-eight hours confirming their compliance with this Order;

(6) Respondents are **ORDERED** not to re-detain Petitioner without pre-deprivation notice of the basis for revocation of her release and a pre-deprivation hearing before a neutral arbiter to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, a material change in circumstances such that Petitioner poses a danger to the community or a risk of flight. See Martinez Hernandez v. Andrews, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the

11

government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); Pinchi, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

Dated:  August 13, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

12